## Brenard Manufacturing Company, Appellant, *v.* Kroker.

*Promissory notes—Contracts—Modification of—Corroboration of obligor—Insufficiency.*

In an action of assumpsit on four promissory notes given to secure the payment of certain musical instruments, it appeared that the notes were given pursuant to a written contract under which plaintiff agreed to appoint defendant agent for the sale of such instruments. Defendant received the goods and was appointed agent. The execution of the contract and notes was admitted. The defense was that plaintiff's agent, at the time the contract was signed, stated to defendant that the notes were given as security

for the instruments sent on the first order to be given by defendant. A witness for defendant testified that he overheard a man trying to sell defendant victrolas; that the man wanted the defendant to sign some notes as security for the victrolas; and that the agent said the instruments could be returned and the agency discontinued at any time. The witness did not see any papers nor did he see the contract signed.

Under such circumstances defendant's evidence was not supported by such corroboration as is necessary to avoid the effect of the obligation and judgment for the defendant will be reversed.

Such an instrument cannot be avoided by the uncorroborated evidence of the obligor and the corroboration must go to the execution of the paper.

Argued April 18, 1927. Appeal No. 172, April T., 1927, by plaintiff from judgment of C. P. Beaver County, March T., 1925, No. 287, in the case of Brenard Manufacturing Company v. Anton Kroker. Before PORTER, P. J., HENDERSON, TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ. Reversed.

Assumpsit on promissory notes. Before READER, P. J.

The facts are stated in the opinion of the Superior Court.

Verdict for defendant and judgment thereon. Plaintiff appealed.

*Error assigned,* among others, was the refusal of plaintiff's motion for judgment non obstante veredicto.

*Stewart P. McConnel,* and with him *Roger Cope,* for appellant, cited: Phillips v. Meily, 106 Pa. 536; Streator v. Paxton, 201 Pa. 135; Hicks v. Harbison, 212 Pa. 437; Faux v. Fitler, 232 Pa. 33; Beckett v. Allison, 188 Pa. 279; Eagler et ux. v. Cherewfka et ux., 86 Pa. Superior Ct. 124.

*A. G. Helbling,* for appellee, cited: Templeton et al. v. Shakley, 107 Pa. 379; Johnston v. Patterson, 114 Pa. 398; Green v. North Buffalo Township, 56 Pa. 110; McAvoy v. Johns and wife, 70 Pa. 9; Gibson v. Rail-

road Company, 164 Pa. 142; Federal Sales Co. v. Farrell, 264 Pa. 149.

OPINION BY HENDERSON, J., July 8, 1927:

The plaintiff's action is based on four promissory notes for $45 each, dated January 12, 1924, signed by the defendant and delivered by him to the plaintiff to secure the payment for certain musical instruments known as Claxtonola and twelve double faced records to be used therewith. They were given pursuant to the provisions of a contract, Exhibit A attached to the statement of claim, under which the plaintiff agreed to appoint the defendant an agent in the City of Pittsburgh for the sale of such instruments and records. The execution and delivery of the contract and notes is admitted. The merchandise was received by the defendant and he was appointed an agent of the company as provided for in the contract. On May 29, 1924, the defendant sent a notice to the plaintiff that he wished to discontinue the agency for the sale of the instruments; his reason therefor being that he was quitting his business. The defense presented at the trial was that at the time the contract was signed and as an inducement thereto, an agent, acting for the plaintiff in the transaction, stated to the defendant that the contract was merely for the appointment of the defendant as agent for the plaintiff in the sale of instruments and that the notes were to be given as security for those sent on the first order to be given by the defendant. The latter claimed not to be able to read well in the English language and stated that he did not read the paper nor ask to have it read to him; that he relied on the statement of the agent. The wife of the defendant and a clerk in his shop were not called to read the papers for him. He was in the bakery business and had lived in the City of Pittsburgh or that vicinity for more than twenty years. He at-

tended school for some years in Germany and was educated in the German language. It may be inferred from the evidence in the case that he is a man of average intelligence and he appears to have had some business experience. Apparently he did not misunderstand the terms of the contract as to his authority as an agent and he acted as such for about three months. The only attempt to corroborate his testimony appears in the evidence of a witness named Krell. This witness in response to somewhat leading questions stated that he was working for the defendant in Pittsburgh in January, 1923. In answer to the inquiry whether he saw this agent O'Neil who had procured the contract in question, he replied I saw an agent; I didn't know his name. The defendant and the agent were talking in the store. They were talking about victrolas. The witness said that he hadn't much time, but he heard the agent coaxing Mr. Kroker to sign some notes which Kroker didn't want to sign, during which conversation the man said that he, the defendant, should sign these notes as security for the victrolas; that the man said they could be sent back any time and that the defendant could discontinue the agency and return the property. In answer to the question was there any agreement or papers there, the witness replied, I didn't see any. In answer to the further question "And you left before any papers were signed"? He answered "Yes, I did." To the further question did you see these papers, he replied, no, I didn't. It is apparent we think that this evidence is not such corroboration as is required when it is proposed to modify or contradict a written contract. If we assume that the testimony of the defendant is sufficiently clear to disclose a defense, it cannot be said that it is supported by such corroboration as to make the evidence clear, precise and indubitable as is necessary to avoid the effect of the obligation: Phillips v.

Meily, 106 Pa. 536; Fuller v. Law, 207 Pa. 101; Hicks v. Harbison, 212 Pa. 437; Faux v. Fitler, 232 Pa. 33. The rule is well established that such an instrument cannot be avoided by the uncorroborated evidence of the obligor, and the corroboration must go to the execution of the paper. The testimony of the witness Krell neither identifies the time nor the person who had the conversation with the defendant and he frankly states that no papers were seen and that he was not present at the signing of any agreement. Even if he identified the time when the plaintiff's agent and the defendant were in conversation about the sale of victrolas or the appointment of an agent, there is not the slightest suggestion with respect to the terms on which the parties actually contracted at some later time. Written evidence of indebtedness or of other contract obligations would be little more than scraps of paper if their prima facie integrity is to be overcome by evidence whose weight only exists in inferences or implications. In our judgment, the evidence of the defendant is not corroborated by relevant evidence or circumstances and the allegation of a contemporaneous parole agreement modifying the written contracts is not supported by an adequate weight of evidence. The plaintiff was entitled therefore to an affirmation of the point set forth in the first assignment of error in effect requesting binding instructions for the plaintiff. It follows that the rule for judgment non obstante veredicto should have been made absolute.

The judgment is reversed and it is now entered in favor of the plaintiff.