| 66  348 |
|---------|
| 190 337 |
| 66   348 |
| 24 SC 204 |

## Hoeveler *versus* Mugele *et al.* ⌐

1. In an action on a bond for purchase-money of land, evidence for defendant, that the land was to be the basis of an oil and mining company, that the sum secured was to be paid when realized from the sale of stock or if the stock could not be sold from the products of the land, was admissible.

2. The jury found for the plaintiff, "the lien, &c., of the judgment to be confined to the proceeds of sale of the stock and products of the land," &c. *Held* to be proper.

3. Aycinena *v.* Peries, 6 W. & S. 243, Irwin *v.* Shoemaker, 8 Id. 75, recognised.

November 1st 1870. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the.Court of Common Pleas of *Allegheny county:* No. 100, to October and November Term 1870.

On the 23d of February 1867, Augustus Hoeveler brought an action of debt against Charles P. Mugele, Adam Becker, Raymond Schaffer, William Euler and Ludwig Schmidt. The plaintiff having died, Elizabeth Hoeveler, his administratrix, was substituted.

The cause of action was the following instrument, signed under seal by all the defendants, and dated November 7th 1865.

"On or before the first day of May next (1866), we jointly and severally promise to pay to Augustus Hoeveler, of the county of Allegheny, or his assigns, the sum of two thousand two hundred and eighty-five dollars and· seventy-two cents, together with interest from this date, it being in full payment for the purchase of six hundred acres of land, on the east side of Cheat river, below Rowlesburg, in Preston county, West Virginia, this day conveyed to us by him; for the true payment of which we bind ourselves," &c.

On the trial, before Mellon, J., the plaintiff read the note in evidence and rested.

The defendants then offered to prove that at the time the note was executed, it was understood between all the parties that the land, for a part of the purchase-money of which the note was given, was to be conveyed by defendants, together with other lands held by them, to an oil company about to be formed, and that plaintiff would depend for payment of his note upon the sale of shares in the oil company, and failing that, upon the sale of timber and mineral products of the company's lands. The plaintiff objected to the testimony; it was admitted and a bill of exceptions sealed.

The testimony was in accordance with the offer. It is stated in detail in the opinion of Mr. Justice Read.

[Hoeveler *v.* Mugele.]

The verdict was for plaintiff for $2771.07 : " The lien and execution of any judgment upon this verdict, to be restricted and confined to the proceeds of sales of shares and products of the lands of the Pittsburg Lumber, Oil and Mining Company, situate in Preston county, West Virginia, and in default of payment thereof out of such proceeds and products, then to the said lands of said company," subject to the opinion of the court on the question of law reserved.   May 22d 1869, the plaintiff's counsel moved the court to strike out all that part of the verdict which follows the amount found by the jury, and to enter judgment on the verdict so amended.   September 28th 1869, the motion to amend the verdict dismissed, and judgment on the verdict in favor of the plaintiff on the points of law reserved.

The plaintiff took a writ of error, and assigned for error :—

1. Refusing the plaintiff's motion to amend the verdict, and enter judgment on the same as amended:

2. Directing judgment to be entered on the verdict.

3. Admitting the defendants' offer of testimony to contradict the written contract sued on.

*J. F. Slagle* and *H. Burgwin,* for plaintiff in error.

*A. M. Brown,* for defendants in error.—To refuse performance of a promise made to obtain a written instrument is a fraud which cannot be taken advantage of: Campbell *v.* McClenachan, 6 S. & R. 171 ; Morrison *v.* Morrison, 6 W. & S. 516 ; Miller *v.* Henderson, 10 S. & R. 290.   Oral evidence may be given of what occurred at the execution of a contract: Rearick *v.* Rearick, 3 Harris 66 ; Renshaw *v.* Gans, 7 Barr 117 ; Chalfant *v.* Williams, 11 Casey 212 ; Bank *v.* Fordyce, 9 Barr 275 ; Rearich *v.* Swinehart, 1 Jones 233 ; Barnhart *v.* Riddle, 5 Casey 92 ; Musselman *v.* Stoner, 7 Id. 265 ; Boyd *v.* Breece, 3 Philada. R. 206 ; Parke *v.* Chadwick, 8 W. & S. 98.

The opinion of the court was delivered, January 3d 1871, by

READ, J.—This was an action to recover the sum of $2285.72 with interest, upon a bond executed by the defendants, promising to pay that amount to the decedent, it being in full payment for the purchase of 600 acres of land, on the east side of Cheat river, below Rowlesburg, in Preston county, West Virginia, this day conveyed to us by him.   It is dated the 7th November 1865, and the defence shows it was a part of a plan to organize an oil company, and the defendants offered parol evidence of what occurred between the parties at and immediately before the execution of the instrument.   This was objected to by the plaintiffs, but the learned judge admitted the testimony, and sealed a bill of exceptions.

[Hoeveler *v.* Mugele.]

The evidence thus admitted showed that Augustus Hoeveler, being the owner of 600 acres of land on the east side of Cheat river, in Preston county, West Virginia, proposed to the defendants the organization of the " Pittsburg Lumber, Oil and Mining Co.," with said land and other lands of the defendants as a basis, and for that purpose, and preliminary to said organization, to convey his land to defendants for said company, at the nominal consideration of $6000, payable as follows, viz.: $3714.28 in stock, and the residue, $2285.72, in cash, when realized by sale of stock to outside parties ; and in case the stock could not be sold, then Hoeveler was to look to the products of the land, to wit, timber, lumber, &c., to be obtained from the land, and in the meantime the defendants were to give their note for said sum of $2285.72 as a voucher for amounts to be paid, and because there were no officers of the company to issue such obligation. The defendants also agreed to take stock for their lands, and all the parties were to share in the profits, according to their *pro rata* interest in their adventure. The company was organized and chartered, mills erected, and other things done in furtherance of the common object; but they were unable to sell sufficient stock to pay the Hoeveler note, and evidence was given tending to prove that the failure was attributable to the default of Mr. Hoeveler.

This evidence was clearly admissible, and to have excluded it would have been permitting the commission of a fraud upon the defendants.

The jury found a verdict for the plaintiff, with this restriction : "the lien and execution of any judgment upon this verdict, to be restricted and confined to the proceeds of sales of shares and products of the lands, of the Pittsburg Lumber, Oil and Mining Co., situate in Preston county, West Virginia, and, in default of payments thereof out of such proceeds and products, then to the said lands of said company," following the memorable examples of Aycinena *v.* Peries, 6 W. & S. 243; Irwin *v.* Shoemaker, 8 Id. 75.

This verdict was perfectly right, and in entering judgment upon it the court committed no error.

Judgment affirmed.